O

United States District Court
Central District of California

| | |
|---|---|
| CALIFORNIA CAPITAL INSURANCE COMPANY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>MAIDEN REINSURANCE NORTH AMERICA, INC., et al.,<br><br>Defendants. | Case No. 2:20-cv-01264-ODW (JPRx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE [11]** |

## I.     INTRODUCTION

Defendant Maiden Reinsurance North America, Inc. ("MRNA") moves to dismiss Plaintiffs California Capital Insurance Company, Eagle West Insurance Company, Monterey Insurance Company, and Nevada Capital Insurance Company's (collectively, "CIG") second cause of action for breach of the covenant of good faith and fair dealing.  Alternatively, MRNA moves to strike CIG's second cause of action including the request for attorneys' fees and statutory penalties.  For the reasons that

follow, the Court **GRANTS** MRNA's Motion to Dismiss and **GRANTS** in part and **DENIES** in part MRNA's Motion to Strike.[1]

## II. BACKGROUND

From 2006 through 2016, MRNA reinsured CIG, and in 2012, the insurance companies formalized their agreement by signing a Multiple Line Excess of Loss Reinsurance Agreement, which delineates the terms of the reinsurance. (Notice of Removal Ex. A ("Compl.") ¶ 11, ECF No. 1-3.) In 2018, Enstar Insurance Company ("Enstar"), which purchases failing insurance companies, purchased MRNA. (Compl. ¶ 12.)

After Enstar acquired MRNA, CIG alleges MRNA began fabricating reinsurance coverage disputes as to livery, trucking, and habitability claims. (Compl. ¶¶ 5, 12–23.) For example, MRNA allegedly refused to pay valid claims it had previously agreed to pay under the livery program, failed to reimburse CIG for livery losses covered under the reinsurance contract, altered its treatment of habitability claims minimizing its reinsurance obligation, and demanded return of reinsurance payments MRNA had previously made for livery claims, trucking losses, and habitability claims. (Compl. ¶¶ 14–23.)

As a result of these changes, CIG filing suit against MRNA for breach of contract and breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 24–40.) As for the second cause of action, CIG alleges MRNA failed to reimburse CIG according to the reinsurance contract, unreasonably rejected CIG and MRNA's original intent and mutual understanding of the terms of the reinsurance contract, failed to conduct appropriate investigations, and wrongfully and unreasonably delayed payment of valid claims. (Compl. ¶ 34.) CIG alleges it has sustained damages as a direct and proximate cause of MRNA's breach and seeks interest at the legal rate, attorneys' fees, and statutory penalties according to applicable state law. (Compl.

---

[1] After carefully considering the papers filed related to the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

¶ 36.)

On December 23, 2019, CIG filed a Complaint in Los Angeles County Superior Court, which MRNA removed under diversity jurisdiction on February 7, 2020. (*See* Compl.; Notice of Removal, ECF No. 1.) On March 2, 2020, MRNA moved to dismiss CIG's second cause of action for breach of the covenant of good faith and fair dealing, or alternatively, strike CIG's second cause of action. (*See* Mot. to Dismiss and Strike ("Mot."), ECF No. 11.)

### III. MOTION TO DISMISS

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*,

266 F.3d 979, 988 (9th Cir. 2001). A court may not "supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

**A.** **Discussion**

MRNA contends that CIG's second cause of action should be dismissed because reinsureds may not recover tort damages in California for breach of the covenant of good faith and fair dealing. (Mot. 1.) CIG argues that because reinsurance is a form of insurance, tort remedies should be available in the reinsurance context. (Opp'n to Mot. ("Opp'n") 6–7, ECF No. 14.) MRNA counters that the relationship between a reinsurer-reinsured is fundamentally different from that of an insurer-insured, and thus should not be subject to liability in tort. (*See* Mot. 3–8)

The Supreme Court of California has yet to address this issue, and there is no controlling California Court of Appeal authority on point. In the absence of precedent, the Court must predict and apply the rule it believes the California Supreme Court would adopt under the circumstances. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 663 n.10 (9th Cir. 1998). Consequently, the Court will consider the circumstances in which the California Supreme Court has imposed tort liability in contractual relationships and the policy reasons for extending tort liability to insurance contracts.

*1.     California Supreme Court Treatment*

To determine whether California's high court would impose tort liability in a reinsurance contract, the Court considers the circumstances in which California courts have imposed, or declined to impose, such liability in the past. Although the California Supreme Court has yet to decide this issue, it has consistently limited tort recovery for breach of the covenant of good faith and fair dealing and cautioned courts from extending the recovery of tort damages to other contract contexts. *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 44 (1999); *see, e.g., Erlich v.*

*Menezes*, 21 Cal. 4th 543, 548 (1999) (denying recovery of tort damages in negligent breach of a contract to build a house); *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 654 (1988) (holding that tort damages are not available for breach of an employment contract). "Whereas contract actions are created to enforce the intentions of the parties to the agreement, tort law is primarily designed to vindicate social policy." *Foley*, 47 Cal. 3d at 683 (internal quotation marks omitted).

The covenant of good faith and fair dealing is a contract term that "has almost always been limited to contract rather than tort remedies," except in cases that involve insurance contracts. *Id.* at 684. Although this exception was "a major departure from traditional principles of contract law," California's high court has permitted tort recovery for breach of the implied covenant in the insurance context for various policy reasons. *Id.* at 684–90. Specifically, it has considered how insurance policies are unique when compared to contracts for goods or services because they are quasi-public and "characterized by elements of adhesion, public interest and fiduciary responsibility." *Cates*, 21 Cal. 4th at 44.

CIG argues that because reinsurance is a type of insurance, tort damages are automatically available for a breach of the implied covenant. (Opp'n 6.) The Court is not persuaded. Although reinsurance is a type of insurance, CIG fails to consider the significant differences between the two relationships. In *Cates*, the California Supreme Court rejected the very argument that tort damages were available where there was a breach of the implied covenant in every insurance context. 21 Cal. 4th at 52. It held that tort damages could not be recovered for a breach of the implied covenant in a surety bond, even though a surety bond is a type of insurance mentioned in the California Insurance Code. *Id.* at 52, 60. To reach this conclusion, the California Supreme Court considered the relationship between the parties in surety arrangements and determined that those parties "have certain rights and defenses that . . . typical insurance relationships" simply do not share. *Id.* at 48. The court looked at the relationship between the parties to "evaluate whether the policy

considerations recognized in the common law support the availability of tort remedies in the context of a performance bond." *Id.* at 52–56.

Because the California Supreme Court has consistently limited tort recovery for breaches of the covenant of good faith and fair dealing, the Court determines that California's high court would only extend liability to reinsurance contracts if they were at risk of the same violations of social policy that led the court to extend tort liability to insurance contracts. Here, the Court will look at the same policies the California Supreme Court considered in *Cates* to determine whether tort damages should extend to reinsurance contracts.

### 2. Policy Considerations

To determine whether the California Supreme Court would extend tort liability to the reinsurance context, the Court considers whether a breach of a reinsurance contract violates the same social policies as a breach of an insurance contract. Thus, the Court must consider whether a reinsurance contract is characterized by the same elements as an insurance contract to implicate similar policy concerns, specifically "elements of adhesion and unequal bargaining power, public interest and fiduciary responsibility." *Id.* at 44.

First, the Court will consider whether reinsurance is marked by elements of adhesion and unequal bargaining power. Individuals obtain insurance policies for "peace of mind and security" and typically must accept an insurance policy on a "take-it-or-leave-it" basis. *Id*. at 52. In contrast, insurance companies obtain reinsurance policies to increase profits, and those policies are negotiated between two sophisticated business parties where the reinsureds have the ability to "include penalty provisions in their reinsurance contract . . . [and] know[] how to employ the legal process to recover for such a breach." *Stonewall Ins. Co. v. Argonaut Ins. Co.*, 75 F. Supp. 2d 893, 909 (N.D. Ill. 1999) (finding that the California Supreme Court would not extend tort remedies to reinsurance contracts). Given that CIG is an insurance company, or a sophisticated business party, that can negotiate its

reinsurance contract, the Court finds the reinsurance relationship between MRNA and CIG is not marked by the same elements of adhesion and unequal bargaining power that led the California Supreme Court to justify tort damages for breaches of insurance contracts. *Cates*, 21 Cal. 4th at 52–53; (Compl. ¶ 1–4.)

Next, the Court will consider whether reinsurance contracts sparks similar public interest concerns as insurance contracts. The California Supreme Court has recognized two public interest considerations that support tort remedies in insurance cases. First, the high court reasoned "that tort remedies are appropriate in the insurance policy context because insureds generally do not seek to obtain commercial advantages by purchasing policies; rather, they seek protection against calamity." *Cates*, 21 Cal. 4th at 53. "[T]he typical insurance policy protects an insured against accidents and generally unforeseeable losses caused by a calamitous or catastrophic event such as disability, death, fire, or flood." *Id.* Thus, "[t]he insurers' obligations are . . . rooted in their status as purveyors of a vital service labeled quasi-public in nature." *Foley*, 47 Cal. 3d at 684–85 (quoting *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 820 (1979)). Second, "an insured faces a unique economic dilemma when its insurer breaches the implied covenant of good faith and fair dealing." *Cates*, 21 Cal. 4th at 43 (internal quotation marks omitted). Typically, parties in contract are able to "seek recourse in the marketplace in the event of a breach." *Id.* This is not generally the case for an insured as "an insured will not be able to find another insurance company willing to pay for a loss already incurred." *Id.*

Unlike liability insurance which provides insureds with peace of mind and protection against calamity, insurance companies purchase reinsurance to increase profits by spreading the burden of indemnification, which allows them to "write more policies than their reserves would otherwise sustain." *Catholic*, 42 Cal. 4th at 368; *see Cates*, 21 Cal. 4th at 53–54 (finding that surety bonds provided creditors with commercial advantage and additional financial security rather than protection

against calamity). Unlike liability insurance, reinsurance is not quasi-public in nature; rather, reinsurance is a contract whereby "an insurer procures a third person to insure him against loss or liability by reason of such original insurance." Cal. Ins. Code § 620. "Reinsurance agreements are separate and distinct from the policy agreements entered into by the insurer and its insured," and "[t]he original insured has no interest in a contract of reinsurance." *Am. Re–Insurance Co. v. Ins. Comm'n of Cal.*, 527 F. Supp. 444, 453 (C.D. Cal. 1981) (quoting Cal. Ins. Code § 623).

However, "[r]einsureds do face the economic dilemma recognized by the California Supreme Court. In the event of non-payment by the reinsurer, they are not able 'to find another insurance company willing to pay for a loss already incurred.'" *Cal. Joint Powers Ins. Auth. v. Munich Reinsurance Am., Inc.*, No. CV 08-956-DSF (RZx), 2008 WL 1885754, at *4 (C.D. Cal. Apr. 21, 2008) (quoting *Cates*, 21 Cal. 4th at 43). Nevertheless, on balance, providing tort damages for breach of an insurance agreement "was a major departure from traditional principles of contract law," and the California Supreme Court has been cautious to extend it to other contract settings. *Foley*, 47 Cal. 3d at 690. Therefore, the Court finds that the California Supreme Court would not impose tort liability on reinsurers because of this public interest issue alone.

Finally, the Court will consider whether reinsurance is marked by elements of fiduciary responsibility. The California Supreme Court has "observed that the tort duty of a liability insurer ordinarily is based on its assumption of the insured's defense and of settlement negotiations of third party claims." *Cates*, 21 Cal. 4th at 44. However, the court has noted that "reinsurers have no comparable duties to investigate or defend claims between third parties and the underlying liability insurers or their insureds, nor do they owe any duty of good faith and fair dealing to the original insureds, unless the reinsurance agreement somehow specifically so provides." *Catholic*, 42 Cal. 4th at 369 (internal quotation marks omitted). Thus, the California Supreme Court clearly indicates: reinsurers do not have the same

fiduciary responsibilities that insurers do to justify imposing tort liability on reinsurers.

In summary, the policy reasons the California Supreme Court considered when extending tort remedies to a breach of the implied covenant in insurance cases are absent from the reinsurer-reinsured relationship. That, along with the California Supreme Court's reluctance to extend this exception to other contract settings, leads the Court to predict that the California Supreme Court would not extend this exception to the reinsurance context.

Accordingly, the Court **GRANTS** MRNA's Motion to Dismiss and dismisses the implied covenant cause of action to the extent that CIG seeks tort remedies. The cause of action premised on contractual damages remains.

## IV.    MOTION TO STRIKE

Under Rule 12(f), the Court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003); *see also Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 518 (N.D. Cal. 2004) ("Courts have long disfavored Rule 12(f) motions, granting them only when necessary to discourage parties from making completely tendentious or spurious allegations.").

"In ruling on a motion to strike under Rule 12(f), the court must view the pleading in the light most favorable to the nonmoving party." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011). "Thus, 'before granting such a motion, the court must be satisfied that there are no questions

of fact, that the claim or defense is insufficient as a matter of law, and that under no circumstance could it succeed.'" *Id.* (alterations omitted) (quoting *Tristar Pictures, Inc. v. Del Taco, Inc.*, No. CV 99-07655-DDP (Ex), 1999 WL 33260839, at *1 (C.D. Cal. Aug. 31, 1999)).

**A.    Discussion**

MRNA contends that CIG's second cause of action should be stricken because the breach of the implied covenant of good faith and fair dealing as a contract claim is redundant of the first cause of action for breach of contract.  (Mot. 1.)  MRNA additionally asserts that CIG's prayers for attorneys' fees and statutory penalties should be stricken as there is no basis for them.  (Mot. 1.)  The Court will address each argument in turn.

*1.    Whether CIG's Second Cause of Action Should be Stricken*

The Court previously discussed CIG's second cause of action as related to tort damages.  Here, the Court addresses whether the theory for CIG's second cause of action that sounds in contract should be stricken.  "If the allegations [of a complaint for breach of the implied covenant of good faith and fair dealing] do not go beyond the statement of a mere contract breach and, relying on the same alleged facts, simply seek the same damages or other relief claimed in a companion cause of action, they may be disregarded as superfluous as no additional claim is actually stated."  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

MRNA argues that the second cause of action is duplicative of the first cause of action as it reiterates the same two allegations. (Mot. 9.)  In its Opposition, CIG contends that there is nothing redundant about its second cause of action. (Opp'n 12.)  To support its breach of contract cause of action, CIG asserts that MRNA failed to pay its obligations under the reinsurance contract and improperly demanded return payments.  (Compl. ¶ 28.)  While CIG does reiterate the same allegations to support its cause of action for breach of the implied covenant, CIG

additionally asserts that MRNA altered prior course of conduct under the reinsurance contract and in bad faith contested claims on the books of the insurer. (*See* Compl. ¶ 32.) Additionally, CIG asserts that MRNA unreasonably rejected CIG and MRNA's original intent and mutual understanding of the terms of the reinsurance contract, MRNA failed to conduct appropriate investigations, and MRNA wrongfully or unreasonably delayed payment of valid claims. (Compl. ¶ 34.) It is clear that CIG alleges bad faith conduct that goes beyond the statement of a mere contract breach. Because the Court must view the pleading in the light most favorable to CIG, and there appear to be additional facts alleged in the second cause of action giving rise to a unique claim, the Court finds that the second cause of action is not redundant of the first.

Accordingly, the Court **DENIES** MRNA's Motion to Strike CIG's implied covenant claim premised on contractual damages.

2. *Whether There is a Basis for CIG's Prayers for Attorneys' Fees and Statutory Penalties*

In addition to CIG's prayer for damages for MRNA's breach of contract and breach of the implied covenant, CIG seeks attorneys' fees and "any statutory penalties, according to applicable state law." (Compl. ¶ 40.) For the following reasons, the Court finds these prayers for relief improper.

CIG prays for attorneys' fees as allowed by applicable law pertaining to its second cause of action. (Compl. ¶ 36.) Generally, each party pays its own attorneys' fees unless a contract allocates them differently. *Trope v. Katz*, 11 Cal. 4th 274, 278 (1995). Attorneys' fees may also be recoverable in the event a party is liable in tort. *Brandt v. Super. Ct.*, 37 Cal. 3d 813, 817 (1985). Given that CIG did not allege the reinsurance contract allocated attorneys' fees differently, and the Court has dismissed CIG's second cause of action as it relates to tort damages, the Court finds CIG's prayer for attorneys' fees improper.

Additionally, CIG prays for "any statutory penalties, according to applicable state law." (Compl. ¶ 40.) The Court may strike any insufficient claim. *Cholakyan*, 796 F. Supp. 2d at 1245; Fed. R. Civ. P. 12(f). CIG did not identify the penalties it seeks, did not identify the applicable state law that authorizes those penalties, and did not even mention statutory penalties in its Opposition. (Opp'n 12–13; *see generally* Compl.) Because CIG does not allege any statutory violation that permits penalties in its Complaint or in its Opposition, the Court finds CIG's request for that type of relief improper as a matter of law. *Cholakyan*, 796 F. Supp. 2d at 1245.

Accordingly, the Court **GRANTS** MRNA's Motion to Strike CIG's prayers for attorneys' fees and statutory penalties.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** MRNA's Motion to Dismiss CIG's second cause of action as to the tort remedies, **DENIES** MRNA's alternative Motion to Strike CIG's second cause of action, and **GRANTS** MRNA'S Motion to Strike CIG's request for attorneys' fees and statutory penalties.

**IT IS SO ORDERED.**

July 16, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**